IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 4:20CR380 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| v. | ) | |
| | ) | |
| TASHE GOINS, | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT'S MOTION TO SUPPRESS |
| Defendant. | ) | |
| | ) | |

Now comes Plaintiff, the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Yasmine Makridis, Assistant United States Attorney, and hereby submits its response to Defendant's Motion to Suppress (R.23). For the reasons set forth below, Defendant's Motion should be denied.

                Respectfully submitted,

                JUSTIN E. HERDMAN
                United States Attorney

By: /s/ Yasmine Makridis
    Yasmine Makridis (OH: 0090632)
    Assistant United States Attorney
    100 E. Federal Street,
    City Centre One, Suite 325
    Youngstown, OH 44503
    (330) 740-6992
    (330) 746-0239 (facsimile)
    Ymakridis@usa.doj.gov

**MEMORANDUM**

I.    **STATEMENT OF FACTS**

Goins was travelling in a vehicle containing 4 kg of cocaine through the Northern District of Ohio on Interstate Route 80 when she committed a marked lane violation. On June 16, 2020 at approximately 4:51 p.m., Ohio State Highway Patrol Trooper McGill was on stationary patrol when Goins approached him, rapidly slowed, and committed a marked lane violation. Goins rapidly drove over the white dotted line (lane divider) by approximately 2-3 feet then quickly pulled back into her lane. Trooper McGill observed that the rear license plate was obstructed. When Trooper McGill pulled next to Goins, Goins slowed to under 60 mph.

Trooper McGill initiated a traffic stop. As Trooper McGill made contact with Goins he explained the reason for the stop and let Goins know that that she would be receiving a warning for the marked lane violation and license plate obstruction. Trooper McGill asked Goins for her license, registration, and proof of insurance. Goins only handed him her driver's license. Goins was shaking uncontrollably. Goins displayed increased respiration and Trooper McGill noticed Goins' right carotid artery pulsating. Goins said that the vehicle belonged to her aunt and that she was driving from Chicago to Pittsburgh to pick up her children. Based on Trooper McGill's training and experience, he believed Goins was engaged in criminal activity.

Trooper McGill asked Goins to exit her vehicle to show her the license plate defect. Sergeant Klingensmith arrived on scene to assist. Goins agreed to sit in Sergeant Klingensmith's vehicle as her driver's license was checked. Within a few minutes of the stop, and before a warning ticket was issued, a canine was deployed around the exterior of Goins' vehicle. The canine gave a positive indication of narcotics being present in the vehicle. A search of the vehicle revealed 4 kg of cocaine.

## II. LAW AND ARGUMENT

### a. Goins' traffic stop was based on a traffic violation, and therefore does not violate the Fourth Amendment.

If an "officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir. 1993); *see United States v. Street,* 614 F.3d 228, 232 (6th Cir. 2010) (holding stop for failure to wear seatbelts constitutional); *United States v. Hill,* 195 F.3d 258, 267 (6th Cir. 1999) (holding stop for failing to signal lane change constitutional); *see also Whren v. United States,* 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (finding it reasonable for an officer to stop a vehicle whose driver has just committed a traffic violation). When law enforcement officers witness a traffic violation, they may stop the driver and her car. The warrant requirement generally does not apply to transient items, such as a car. "Before a warrant could be secured the automobile would be beyond the reach of the officer." *Carroll v. United States,* 267 U.S. 132, 146, 45 S. Ct. 280, 69 L. Ed. 543 (1925); *see Almeida–Sanchez v. United States,* 413 U.S. 266, 269, 93 S. Ct. 2535, 37 L. Ed. 2d 596 (1973).

There is nothing "unreasonable" about stopping a vehicle whose driver has just committed a traffic violation. *See Whren v. United States,* 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). Ohio law permitted the trooper to stop Goins based upon the observed traffic violation, regardless of the fact that the violation may have been relatively minor. *See Ohio v. Mays*, 119 Ohio St. 3d 406, 894 N.E.2d 1204 (2008). Here, Trooper McGill observed a marked lanes violation and an obstructed license plate before he stopped Goins. Since this was a stop based on an observation of a traffic violation it does not violate the Fourth Amendment.

3

      **b. Officer conducted the drug sniff before Goins' license was checked and the ticket could be finalized, therefore the traffic stop was not improperly extended.**

An officer may stop and detain a motorist so long as the officer has probable cause to believe that the motorist has violated a traffic law. *United States v. Blair,* 524 F.3d 740, 748 (6th Cir. 2008). "To detain the motorist any longer than is reasonably necessary to issue the traffic citation, however, the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct." *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002). The Fourth Amendment does not require reasonable suspicion to justify using a drug-detection dog as long as the traffic stop and detention are not unlawful or improperly extended. *Illinois v. Caballes,* 543 U.S. 405, 407–08, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005); *see also United States v. Davis,* 430 F.3d 345, 355 (6th Cir. 2005); *United States v. Bell*, 555 F.3d 535, 539–40 (6th Cir. 2009).

    Here, the dog sniff was conducted before Trooper McGill could finalize a ticket or run a computer check on Goins' driver's license. When officers conduct the drug sniff *before* finalizing the ticket (and without unreasonably prolonging the stop), the dog sniff is of no constitutional significance. *See Caballes,* 543 U.S. at 406, 409, 125 S. Ct. 834 (use of a narcotics dog on the exterior of a lawfully seized car, while the police were "in the process of writing a warning ticket," "does not rise to the level of a constitutionally cognizable infringement"); cited by *United States v. Winters*, 782 F.3d 289, 297 (6th Cir. 2015). Requesting a driver's license, registration, rental papers, running a computer check thereon, and issuing a citation do not exceed the scope of a traffic stop for a traffic violation. *United States v. Hill*, 195 F.3d 258, 269 (6th Cir. 1999). " '[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth

4

Amendment's proscription of unreasonable searches and seizures.' " *Arizona v. Johnson,* --- U.S. ----, 129 S. Ct. 781, 786, 172 L. Ed. 2d 694 (2009) (quoting *Pennsylvania v. Mimms,* 434 U.S. 106, 111, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977)); *United States v. Bonilla*, 357 F. App'x 693, 696 (6th Cir. 2009).

The duration of the traffic stop was not extended, in fact the stop only lasted a few minutes. The Sixth Circuit has held that even 21 minutes was not an unreasonable amount of time to complete a traffic stop and issue a warning. *United States v. Collazo*, 818 F.3d 247, 257 (6th Cir. 2016).  Because the dog sniff occurred before Trooper McGill had time to run Goins' license and issue her a warning ticket there was no unreasonable search or seizure and the dog sniff is of no constitutional significance.

### c. If the Court finds that the duration of the traffic stop was extended, based on the totality of the circumstances, Trooper McGill had reasonable suspicion to extend the stop to allow for the dog sniff.

To determine whether reasonable suspicion exists, the Supreme Court has directed courts to "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu,* 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (quoting *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981)). The Court counseled against a "divide-and-conquer analysis" that examines the factors allegedly leading to reasonable suspicion "in isolation from each other." *Id.*

Under the proper totality-of-the-circumstances approach, the Court "must determine whether the individual factors, *taken as a whole,* give rise to reasonable suspicion, *even if each individual factor is entirely consistent with innocent behavior when examined separately.*" *United States v. Smith,* 263 F.3d 571, 588 (6th Cir. 2011)(emphases added); *see also United*

*States v. Marxen*, 410 F.3d 326, 329 (6th Cir. 2005) ("In considering all the circumstances, the question is not whether there is a possible innocent explanation for each of the factors, but whether all of them taken together give rise to reasonable suspicion that criminal activity may be afoot.").

In *Winters*, the Court concluded that an officer had reasonable suspicion to detain an individual for a dog sniff based on nervousness, inconsistent and implausible travel plans, and odd rental arrangement, considered in the aggregate. *United States v. Winters*, 782 F.3d 289, 301–02 (6th Cir. 2015). This information, when considered in light of the officer's "experience," "specialized training," and ability "to make inferences from and deductions about the cumulative information ... that might well elude an untrained person," supported a finding of reasonable suspicion that the defendant was trafficking contraband, which proved to be the case. *See United States v. Garrido,* 467 F.3d 971, 983 (6th Cir. 2006) ( "[T]he officers were entitled to judge [the defendant's] behavior and the information obtained during the safety inspection against the backdrop of their own experience and knowledge...."); *United States v. Winters*, 782 F.3d 289, 301–02 (6th Cir. 2015).

Here, as in *Winters*, Trooper McGill relied on his training and experience to make inferences about Goins. Goins was nervous and shaking uncontrollably. Her right carotid artery was pulsating and she displayed increased respiration. When asked to complete the simple task of handing the Trooper her license, registration, and proof of insurance, she was unable to do so, and only handed the trooper her license. Goins was not driving her own vehicle, and stated she was driving from Chicago to Pittsburgh to pick up her children. Because the totality of the circumstances is the key to the Fourth Amendment analysis in this type of case, nervousness, as well as all of the other factors cited by Trooper McGill should be examined together. When

6

viewed in this light, these factors provided Trooper McGill with reasonable suspicion to extend the stop to allow for the dog sniff and, upon the dog's signal, the search of the vehicle.

### III. CONCLUSION

For the reasons set forth above Defendant's Motion to Suppress should be denied.

                              Respectfully submitted,

                              JUSTIN E. HERDMAN
                              United States Attorney

By:  /s/ Yasmine Makridis
       Yasmine Makridis (OH: 0090632)
       Assistant United States Attorney
       100 E. Federal Street,
       City Centre One, Suite 325
       Youngstown, OH 44503
       (330) 740-6992
       (330) 746-0239 (facsimile)
       Ymakridis@usa.doj.gov