**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:20-cr-380 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| TASHE GOINS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On July 23, 2020, an indictment issued charging defendant Tashe Goins with one count of possession with intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii)(II). (Doc. No. 10 ["Ind."].) Now before the Court is Goins' motion to suppress evidence seized by the government in connection with this charge. (Doc. No. 23 ["Mot."].) Specifically, Goins seeks to suppress evidence seized during a June 16, 2020 traffic stop and statements made by Goins after her arrest. Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 24 ["Opp'n"].) The Court conducted an evidentiary hearing on the motion on December 4, 2020, and, at the conclusion of the hearing, the Court took the matter under advisement.

For the reasons that follow, the motion to suppress is DENIED.

**I. BACKGROUND**

Ohio State Trooper Brian McGill, a ten (10) year veteran of the Ohio State Highway Patrol and a member of the state's K-9 unit, testified at the hearing. He testified that he was on

duty on June 16, 2020 with his K-9 partner, Iso, in a marked cruiser. He was positioned on stationary patrol on the Ohio Turnpike, milepost 206, and he was monitoring eastbound traffic. At approximately 4:51 pm, he observed a Silver Nissan approaching his location. The vehicle was not speeding. But, as the vehicle drove by, the driver abruptly slowed and then caused her vehicle to travel two to three feet over the white dotted lane divider before rapidly moved back into her original lane. According to Trooper McGill, this represented a marked lane violation prohibited by Ohio Rev. Code § 4511.33. While he was watching the Silver Nissan, he noticed a second traffic violation—the rear license plate of the vehicle was partially obstructed. Specifically, Trooper McGill observed that the name of the state that issued the license plate was not fully visible through the license plate bracket. This also represented a violation of Ohio law. *See* Ohio Rev. Code § 4503.21(A).

Having witnessed two traffic violations, Trooper McGill pulled onto the highway and attempted to pull alongside the Nissan. In what he viewed as a reaction to his presence, the Nissan slowed to 50 miles-per-hour, well below the 60 mile-per-hour speed limit. He testified that it is unusual for a motorist who is already going below the speed limit to further reduce her speed upon observing law enforcement. He pulled up behind the vehicle and activated his light bar to make the traffic stop.

The resulting encounter was captured on Trooper McGill's cruiser camera, and the video recording was played at the hearing.[1] (Gov. Ex. 1 (Video).) After exiting his cruiser, Trooper McGill approached the vehicle and noticed only one occupant—the driver—Goins. He explained

---

[1] The video only captured visual images—without sound—of the stop. Trooper McGill testified as to the verbal exchange between himself and Goins.

to her the reason for the stop and asked for her license, registration, and insurance. Goins initially only produced her license. While he acknowledged motorists are often nervous upon being pulled over by the police, Trooper McGill testified credibly that Goins appeared excessively nervous for a routine traffic stop. According to Trooper McGill, Goins was shaking uncontrollably. As they spoke, he noticed her respirations increase, and he could see that her right carotid artery was pulsating. He asked her where she was going, and she indicated that she had left Chicago and was traveling to Pittsburgh to pick up her children. She also stated that the silver Nissan belonged to her aunt.

When she opened the vehicle's center console to retrieve the registration and proof of insurance, Trooper McGill observed approximately thirty (30) loose small black rubber bands. Based on his experience and training, he knew that these rubber bands are often used to secure rolls of currency. He asked Goins to exit the vehicle so that he could show her the license plate infraction. (*See* Gov. Ex. 2 (Photograph of Nissan's license plate showing partial obstruction).) As she exited the vehicle, she rolled up the windows and locked the doors. Trooper McGill testified that it was uncommon for a motorist to lock their vehicle during a traffic stop.

As Goins was exiting the Nissan, Trooper McGill's superior, Sergeant Klingensmith, arrived on the scene. Trooper McGill testified that the sergeant was engaged in traffic patrol at a nearby location. He could not remember whether he requested backup or whether his sergeant simply saw the traffic stop in progress, but he testified that it was common for other officers to voluntarily come to the scene of a traffic stop to offer assistance. After showing Goins the obstructed license plate, Trooper McGill asked her to sit in the sergeant's vehicle for the remainder of the traffic stop. He testified that it was still necessary to radio her license number to

dispatch so that a search for outstanding warrants could be performed before a citation could be issued, and he noted that it can take upwards of fifteen (15) to twenty (20) minutes to receive the results of a warrants search.

From the video, Sergeant Klingensmith can be seen escorting Goins to his cruiser where he would use his radio to call in her license number. Simultaneously with Goins and the sergeant entering the second cruiser, and before the results of the warrant search were communicated to the sergeant, Trooper McGill and Iso run around Goins' vehicle. According to the video, the free air dog sniff took place six (6) minutes and fourteen (14) seconds into the stop, and it only lasted a few seconds. The dog alerted to the smell of narcotics, and a subsequent search of the vehicle yielded four (4) kilograms of cocaine. It is undisputed that the results of the warrants search came back approximately five (5) to six (6) minutes *after* the dog sniff took place, and that Trooper McGill could not issue a citation until after the warrants search was complete.[2]

## II. DISCUSSION

### A. **Investigatory Stop and Dog Sniffs**

In her motion, Goins complains that Trooper McGill stopped her on the pretext of investigating traffic violations and then unduly delayed or extended the stop by performing the free air dog sniff. It is well settled that an officer has probable cause under the Fourth Amendment to stop a vehicle when he observes a driver violate a traffic law. *United States v. Hughes*, 606 F.3d 311, 315–16 (6th Cir. 2010). The officer's internal motivation is irrelevant "[s]o long as the officer has probable cause to believe that a traffic violation has occurred or was

---

[2] The record shows that the traffic infractions were observed by Trooper McGill at 4:51 pm. The free air sniff occurred at 4:58 pm, and the results of the warrants check were radioed to Sergeant Klingensmith at 5:03 pm.

occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). Trooper McGill testified credibly that he witnessed Goins perform a marked lane violation, and the video and picture of the Nissan's license plate show the partially obstructed plate. The Court finds that Trooper McGill was justified by his suspicion that Goins had committed two traffic violations in initiating the stop.

Goins then states that Trooper McGill unnecessarily prolonged the stop with the dog sniff. Police activities during an investigatory stop must be reasonably related to the circumstances that initially justified the stop. *See United States v. Sharpe*, 470 U.S. 675, 682, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985); *Dorsey v. Barber*, 517 F.3d 389, 398 (6th Cir. 2008) (quotation marks and citation omitted). During the investigatory stop, police may ask questions or request documents to establish a person's identity and to confirm or dispel suspicions of criminal activity. *See Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972). A request to produce a driver's license and registration, and the initiation of a warrants check upon the driver's license, also do not exceed the scope of a traffic stop. *United States v. Hill*, 195 F.3d 258, 269 (6th Cir. 1999). An officer may even ask questions unrelated to the traffic stop so long as they do not delay the resolution of the traffic infraction. *See United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012) (As part of an officer's traffic mission, an officer may inquire into matters unrelated to the justification for the stop "so long as those inquiries do not measurably extend the duration of the stop.") (quotation marks and citation omitted). But "[t]he Fourth Amendment allows police to detain a suspect on reasonable suspicion only for as long as it takes for the police to test the validity of their suspicions." *United States v. Davis*, 430 F.3d 345, 354, 357 (6th Cir. 2005) (noting that a constitutional initial stop can "become an

impermissible seizure if it occurs over an unreasonable period of time or under unreasonable circumstances") (quotation marks and citation omitted). "Simply put, 'an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'" *Id.* (quoting *Fla. v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983)).

Consistent with the authority cited above, in investigating a traffic violation, officers may conduct a canine sniff during a lawful traffic stop as long as the sniff does not extend the duration of the stop beyond the time necessary to address the traffic violation that warranted the stop. *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015); *see United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) ("The Fourth Amendment does not require reasonable suspicion to justify using a drug-detection dog as long as the traffic stop and detention are not unlawful or improperly extended.") In the present case, Trooper McGill advised Goins of the reason for the stop and asked her a limited number of basic questions relating to her identity, travel plans, and reason for being in Ohio. These initial information gathering questions were all related to the mission of the stop and, therefore, cannot have unduly prolonged it. He then asked her to exit the vehicle, showed her the partially obstructed license plate, and then asked her to sit in his sergeant's vehicle while he completed the traffic stop. It is permissible for an officer to ask a motorist to exit her vehicle pending completion of an investigatory stop, *see Maryland v. Wilson*, 519 U.S. 408, 410, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997), and the Court finds that these activities did not unduly prolong the stop.

Finally, and most significant to the present motion, the free air sniff occurred simultaneously with Sergeant Klingensmith escorting Goins to his cruiser and initiating the warrants search. And it is undisputed that the free air sniff was completed before the results of

the warrant search were known. While defense counsel made much of the fact that Trooper McGill testified that he does not routinely perform a dog sniff during a traffic stop, the fact remains that this additional step took no additional time. Because Trooper McGill was working as a team with his sergeant, he was able to pursue the free air sniff while his sergeant continued to investigate and process the traffic violations.

At the hearing, defense counsel also argued that the evidence from the search must be suppressed because the precise moment the warrant search was requested is unknown. But what is known from the record is that the free air sniff occurred six (6) minutes into the stop and the results of the warrants inquiry came back five (5) to six (6) minutes later. Working with this timeline, and factoring in the evidence from the video, it is evident that the sergeant would not have had time to even initiate the license search before the dog alerted to the suspected narcotics, let alone receive the results of the search and communicate those results to Trooper McGill. Contrary to counsel's suggestion, there is no evidence that the state troopers intentionally delayed in requesting a warrants search so as to facilitate the dog sniff. The Court concludes that the state troopers did not unlawfully prolong (and, in fact, did not prolong at all) the traffic stop.[3] *See, e.g., Bell, supra* at 542 (dog sniff and questions unrelated to traffic stop did not delay stop as the dog sniff was over before the officer received results of background check); *United States v. Smith*, No. 18-cr-46, 2019 WL 1756279 (E.D. Ky. Apr. 19, 2019) (denying suppression motion

---

[3] Even if the record supported a finding that the traffic stop was delayed by the few seconds it took Trooper McGill to perform the free air sniff with Iso, the fact remains that the entire encounter only took less than twenty (20) minutes. Any limited delay of an already brief traffic stop would not rise to the level of a Fourth Amendment violation. *See United States v. Collazo*, 818 F.3d 247, 257–58 (6th Cir. 2016) (Twenty-one (21) minutes was not an unreasonable amount of time to process a traffic violation during which officers also investigated suspected illegal drug trafficking).

under similar circumstances).

B. **Reasonable Suspicion**

Alternatively, the Court finds that Trooper McGill had reasonable suspicion to extend the stop to allow for the free air dog sniff. Reasonable suspicion exists when an officer can "point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Courts look at the "totality of the circumstances" to determine whether an officer has a reasonable basis upon which to suspect criminal wrongdoing. *See United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981) (investigatory stop valid when totality of circumstances gives officers "particularized and objective basis" for suspicion of criminal activity). Under this approach, the Court "must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001).

Goins' suspicious behavior—both before and after she was pulled over on two traffic violations—was, when considered together, consistent with someone engaged in criminal activity. Even though she was already traveling under the posted speed limit, when she saw Trooper McGill, she further slowed her vehicle. Once she was stopped and questioned by the trooper, she was shaking, her respirations quickened, and her right carotid artery was noticeably pulsating. Small rubber bands commonly used to secure rolls of currency were visible in the console of her car. She also locked the doors when she was directed to exit the vehicle. Trooper McGill testified that, based on his experience and training, these facts were suggestive of illegal

drug activity, and the Court finds that, based upon the totality of the circumstances, reasonable suspicion existed to perform the dog sniff to test that suspicion. *See United States v. Winters*, 782 F.3d 289, 301–02 (6th Cir. 2015) (nervousness, implausible travel plans, and odd rental arrangement, considered in the aggregate, supported reasonable suspicion of drug trafficking).

### III. CONCLUSION

For the foregoing reasons, Goins' motion to suppress is DENIED in its entirety.

**IT IS SO ORDERED**.

Dated: January 5, 2021

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**