**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:20-cr-380 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| TASHE GOINS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court are the following motions filed by defendant Tashe Goins: (1) Motion *Instanter* to Permit Untimely Filing of Post-Trial Motions (Doc. No. 55); and (2) Consolidated Post-Trial Motions (Doc. No. 56). Plaintiff United States of America (the "government") filed a response to Goins's request for post-trial relief (*see* Doc. No. 57) but did not lodge any opposition to Goins's request to permit the filing of post-trial motions beyond the deadline set forth in the Federal Rules of Criminal Procedure. For the reasons that follow, the motion to file untimely motions under Fed. R. Crim. P. 29 and 33 is granted, and the motion for a new trial and/or a judgment of acquittal is denied.

## I. BACKGROUND

On October 13, 2021, after a two-day jury trial, Goins was found guilty of one count of possession with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii)(II). (Non-document Minute Order, 10/13/2021; Doc. No. 54 (Jury Verdict); *see* Doc. No. 10 (Indictment).) The jury also returned a special verdict finding Goins had possessed 500 grams or more of

cocaine. (Doc. No. 54 at 2[1].) The charge grew out of a July 23, 2020 traffic stop wherein Goins was pulled over, as she traveled eastbound on the Ohio Turnpike, after Ohio State Trooper Brian McGill[2] observed Goins commit two traffic violations. During the resulting stop, Trooper McGill explained the reasons why he stopped her and collected her license and registration. Goins initially advised Trooper McGill that she was driving to Pennsylvania to pick up her children in her aunt's vehicle. Trooper McGill noticed that Goins appeared overly nervous for someone who had been pulled over for traffic infractions, leading Trooper McGill to suspect that Goins was involved in narcotics trafficking or some other illegal activity.[3] His suspicions were heightened when, upon being asked to exit the vehicle so that Trooper McGill could show her the obstructed license plate, Goins rolled up the windows and locked the doors. Accordingly, while Trooper McGill's sergeant—Jared Klingensmith—who was also on the scene, processed the traffic violations, Trooper McGill performed a dog sniff with his K9 officer. The dog alerted to the presence of narcotics, and a subsequent search of the vehicle yielded four (4) kilograms of cocaine in an unlocked suitcase in the back seat of the vehicle. Goins was arrested and was read her rights.

Trooper McGill testified that, after Goins was *Mirandized*, she gave a voluntary statement wherein she advised officers that her aunt gave her $1,000 to transport the suitcase from Chicago to Pennsylvania to deliver it to a man she did not know named Toochie. Goins was

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

[2] Subsequent to the traffic stop, but prior to trial, Trooper McGill was promoted to sergeant. For ease of reference, this opinion refers to Sergeant McGill as "Trooper McGill."

[3] At trial, Trooper McGill testified that Goins's breathing was quickened, she was visibly shaking, and her right carotid artery was pulsating. He thought this was especially surprising, given that he had just informed her that she would only be receiving a warning for her traffic infractions.

instructed to call her aunt, from whom she had borrowed the car for the trip, when she crossed over the border into Pennsylvania. According to Goins, her aunt would then tell her where to go to complete the delivery. Drug Enforcement Administration ("DEA") Special Agent ("S.A.") Fraser testified as an expert witness that narcotics generally travel west to east, and that the details Goins shared with the officers regarding her travel arrangements and instructions were consistent with those who serve as "drug mules."

Goins did not testify at trial. Instead, in opening statements, defense counsel informed the jury that Goins probably suspected that there was something illegal inside the suitcase, but he insisted that Goins did not know that she was transporting narcotics. He told the jury that the evidence would demonstrate that drug mules transport either drugs or drug proceeds, and that the evidence they would hear at trial would be just as consistent with that of a person transporting money as with an individual carrying drugs. At the conclusion of the government's case, defense counsel moved for a judgment of acquittal under Rule 29(a). He argued that the government presented no evidence that Goins was ever informed of the contents of the suitcase or that she was actually aware that she was transporting cocaine. On that score, he emphasized that Goins never told the officers that she knew that the suitcase contained drugs. Because there was no evidence that she was told that she was transporting narcotics or that she actually looked in the suitcase, counsel insisted that the government failed to establish an essential element of the offense—knowledge. The Court denied the motion finding that—for reasons discussed more fully below—the government had presented sufficient evidence upon which a reasonable jury could find that Goins had either actual knowledge or was deliberately ignorant of the fact that she was transporting narcotics.

In closing arguments, defense counsel again argued that there was no evidence that Goins was actually aware that she was transporting narcotics. The Court instructed the jury on the elements of the charged offense, including the requirement that the government prove beyond a reasonable doubt that Goins knowingly and intentionally possessed cocaine. On the subject of "knowing", the Court instructed the jury on the concepts of inferring the required mental state as well as deliberate ignorance.

Goins now moves for judgment of acquittal and for a new trial. In support of her Rule 29(c) motion, Goins reiterates that there was no evidence offered at trial that she was ever told or shown the contents of the luggage that was placed in the vehicle she was driving. She argues that "[t]here was simply no proof whatsoever that she knew there were narcotics inside the bag." (Doc. No. 56 at 1–2.) She also moves for a new trial under Rule 33(a) arguing that the Court erred in instructing the jury on the concept of "deliberate ignorance" and in denying her motion to suppress evidence from the July 2020 traffic stop. (*Id*. at 2–3.)

## II.  TIMELINESS OF POST-TRIAL MOTIONS

Rule 29 requires a defendant to "move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). Rule 33 also requires all motions for a new trial that are not based on newly discovered evidence to be filed "within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). The jury returned its verdict on October 13, 2021, and the Court discharged the jury immediately thereafter. The present post-trial motions were filed on November 17, 2021, which was thirty-five days after the verdict and twenty-one days beyond the filing deadline. By way of explanation, defense counsel avers that the delay was the result of

unexpected developments in other cases, coupled with a delay in a jury trial in California, that "inadvertently resulted in the undersigned overlooking the deadline to file Ms. Goins's post-trial motions." (Doc. No. 55 at 1–2.)

While the filing deadlines in Rule 29 and 33 were once treated as jurisdictional, the Supreme Court has since clarified that the deadlines are more appropriately considered "rigid" claim processing rules. *Eberhart v. United States*, 546 U.S. 12, 13, 16, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005). The practical consequence of the shift in treatment of the filing deadlines is that the government may waive or forfeit its objection to the untimeliness of such motions. *Id*. at 15. While afforded an opportunity to do so, the government failed to file an opposition to Goins's motion for leave or otherwise lodge an objection to the untimely filing of the post-trial motions. Accordingly, the Court finds that the objection is waived, and the Court may reach the merits of Goins's motions under Rules 29 and 33.

### III. GOINS'S RULE 29 MOTION

#### A. Standard of Review

Goins now has renewed her motion for a judgment of acquittal. If the defendant moves for a judgment of acquittal after the government concludes its case, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "The relevant inquiry is whether, 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in original)). "Under the *Jackson v. Virginia* standard, a reviewing

court does 'not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury.'" *Id.* (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). "'Substantial and competent circumstantial evidence by itself may support a verdict and need not remove every reasonable hypothesis except that of guilt.'" *Id.* (quoting *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004)).

B.   **Evidence of Actual Knowledge**

In her post-trial Rule 29 motion, Goins offers no new arguments, and, instead, elects to rely on the arguments her counsel made in the original motion for judgment of acquittal, all of which were limited to the question of the sufficiency of the evidence as to knowledge and which the Court has already considered and rejected on the record. The renewed motion fails for the same reasons as the original motion, and the Court expressly incorporates its earlier bench ruling in full in denying the renewed motion.

While Goins notes that there was no direct evidence that she looked in the suitcase or was otherwise told of the contents of the suitcase before the police informed her that it contained narcotics, the government presented substantial circumstantial evidence that Goins knew she was transporting narcotics. After initially lying to officers that she was driving to Pennsylvania to pick up her children, Goins eventually admitted that she was being paid $1,000 to drive the car to Pennsylvania to deliver a suitcase to a man she had never met before at a location that she would not learn until after she crossed the state line. DEA S.A. Fraser testified that the instructions Goins was provided were consistent with those given to drug mules and further testified that drugs typically travel in the United States from west to east—the direction Goins was traveling when she was stopped by police—while currency flows back from east to west. He also testified

that the drugs were packaged in a way that was typical of drugs that originated from Mexico and subsequently traveled eastbound within the United States.[4]

DEA S.A. Fraser also told the jury that couriers who are transporting drug proceeds—currency—are typically not concerned that they will go to jail if they get pulled over by the police. Rather, while the money will be seized as suspected drug proceeds, the courier, herself, will be issued a receipt after which she is permitted to go on her way. The receipt will enable the courier to demonstrate to her superiors in the drug trafficking organization that she did not pocket the money.

This testimony was significant because there was evidence at trial that Goins exhibited signs of nervousness before and during the traffic stop. Trooper McGill testified that Goins rapidly decreased her speed (that was already below the speed limit) upon being alerted to Trooper McGill's cruiser on the highway. Once she was pulled over, she continued to appear excessively nervous, and she even rolled up the window and locked the doors when she was asked to exit the vehicle—conduct that Trooper McGill indicated was unusual. Trooper McGill and Sergeant Klingensmith further described Goines as defeated when she learned that the vehicle was going to be searched.[5] This evidence was all consistent with someone who knew that she was transporting illegal contraband, such as narcotics. And while she never admitted that she knew her vehicle contained cocaine, the officers testified that Goins never told them that she

---

[4] Specifically, DEA S.A. Fraser explained that the bags of cocaine were tied together with twine in such a way so that they can be easily pulled out of whatever concealment container is being used. According to DEA S.A. Fraser, this method of packaging is referred to as "dope on a rope" and is commonly found in drugs originating from Mexico.

[5] Even though Goins makes much of the fact that Sergeant Klingensmith also testified that Goines's demeanor was constant throughout the police encounter, the arguable differences in perceptions of the testifying officers were questions of fact and/or credibility determinations properly reserved for the jury.

thought she was transporting currency. This evidence would have been sufficient to permit a reasonable juror to conclude that Goins knew she possessed narcotics.

The details surrounding the suitcase would have only served to bolster this reasonable conclusion. The suitcase was not locked, nor was it discovered in a locked trunk. Rather, it was located in the backseat and was easily accessible to Goins. Moreover, the suitcase contained clothing and there were other articles of clothing in the backseat. While the officers testified that Goins never admitted that she knew the suitcase contained narcotics, and she further stated that the clothing in the backseat was not hers (though she initially admitted that the clothing was hers), the jury was free to reject this explanation as an attempt to avoid responsibility and conclude that she either looked in the suitcase or, at the very least, was aware of its contents.

Based on the totality of the evidence, viewed in the light most favorable to the government, the Court reaffirms its finding that a rational trier of fact could have found the essential elements of the charged crime, including the element of knowledge, beyond a reasonable doubt.[6] Accordingly, Goins's Rule 29(c) motion is denied.

---

[6] Alternatively, for reasons discussed in the next section, the Court finds that the evidence was sufficient for a rational juror to find that Goins was deliberately ignorant of the fact that she possessed the cocaine.

8

## IV. GOINS'S RULE 33 MOTION

### A. Standard of Review

Goins has also moved in the alternative for a new trial. A motion for a new trial is governed by Rule 33, which provides that the court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The paradigmatic use of a Rule 33 motion is to seek a new trial on the ground that 'the [jury's] verdict was against the manifest weight of the evidence.'" *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (quoting *United States v. Crumb*, 187 F. App'x 532, 536 (6th Cir. 2006)). "Generally, such motions are granted only 'in the extraordinary circumstance where the evidence preponderates heavily against the verdict.'" *United States v. Graham*, 125 F. App'x 624, 628 (6th Cir. 2005) (quoting *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979)). Under this type of challenge, the district judge may act as a "thirteenth juror," assessing the credibility of witnesses and the weight of the evidence. *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998). "The defendant bears the burden of proving the need for a new trial and such motions should be granted sparingly and with caution." *United States v. Turner*, 995 F.2d 1357, 1364 (6th Cir. 1993).

Relevant to the present motion, Rule 33's "interest of justice" standard also "allows the grant of a new trial where substantial legal error has occurred." *Munoz*, 605 F.3d at 373. This includes "any error of sufficient magnitude to require reversal on appeal." *Id.* (quoting *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004)). The trial court does not assume the role of the "thirteenth juror" for purposes of this type of challenge. *Id.* at 373 n.9.

Goins identifies two court rulings that she believes entitle her to a new trial, which the Court will address in turn.

### B. Deliberate Ignorance Instruction

Goins argues that the Court erred when it instructed the jury, over her counsel's objection, on the subject of deliberate ignorance. After the Court instructed the jury generally on the subject of proving a defendant's state of mind and the concept of inferring the required mental state indirectly, the Court instructed the jury as follows:

> Next, I want to explain something about proving a defendant's knowledge.
>
> No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that the defendant deliberately ignored a high probability that she possessed a controlled substance, then you may find that she knew she possessed a controlled substance.
>
> But to find this, you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that she possessed a controlled substance, and that the defendant deliberately closed her eyes to what was obvious. Carelessness, or negligence, or foolishness on her part is not the same as knowledge, and is not enough to convict. This, of course, is all for you to decide.

According to Goins, "[t]he evidence at trial supported only two scenarios: either [she] knew or she did not know [that the suitcase contained narcotics]. Deliberate ignorance did not enter into it." (Doc. No. 56 at 2.) She argues that by giving the deliberate ignorance instruction, which was lifted verbatim from § 2.09 of the Pattern Criminal Jury Instructions for the Sixth Circuit, the Court effectively lowered the bar and "allow[ed the jury] to convict [Goins] on essentially a theory of negligence[.]" (*Id.* at 2–3.) Well settled Sixth Circuit law forecloses these arguments.

A "deliberate ignorance instruction is warranted to 'prevent[] a criminal defendant from escaping conviction merely by deliberately closing his eyes to the obvious risk that [s]he is engaging in unlawful conduct.'" *United States v. Geisen*, 612 F.3d 471, 485–86 (6th Cir. 2010)

10

(quoting *United States v. Gullett*, 713 F.2d 1203, 1212 (6th Cir. 1983)). "A deliberate ignorance instruction is properly given, therefore, when there is evidence supporting an inference of deliberate ignorance." *Id*. at 486 (citing *United States v. Lee*, 991 F.2d 343, 351 (6th Cir. 1993)). The Sixth Circuit has cautioned that the instruction should not be used "indiscriminately". *United States v. Mari*, 47 F.3d 782, 787 (6th Cir. 1995). However, the Sixth Circuit has also made clear that, even in the absence of evidence to support such a theory, "improperly giving the 'deliberate ignorance' instruction is at most harmless error when the prosecution presented sufficient evidence of actual knowledge." *Geisen*, 612 F.3d at 486 (citing *Mari*, 47 F.3d at 786).

The Sixth Circuit's decision in *Mari* involved a strikingly similar factual background. There, the defendant was driving a pickup truck when he was stopped by police for a traffic infraction. When the defendant provided the officer with a suspicious and internally inconsistent story regarding the reason for his trip, the officer deployed a K9 officer who alerted to the presence of drugs. A trap door was located above one of the truck's two gas tanks that was concealing a considerable quantity of cocaine. *Mari*, 47 F.3d at 783–84. It was determined that the pickup truck did not belong to the defendant, who consistently maintained he did not know that cocaine was hidden in the truck until the police discovered it. *Id*. at 784. At trial, the district court instructed the jury on the theory of deliberate ignorance, and the jury convicted the defendant of possession with intent to distribute cocaine. *Id*. at 783–86.

On appeal, the Sixth Circuit determined that it did not need to reach the question of whether the deliberate ignorance instruction was properly given, because any error (if, indeed, it occurred) was harmless. *Id*. at 785. In so ruling, the court found that any concern that the defendant was convicted on a theory of negligence is foreclosed by the language of § 2.09 of the

11

pattern instruction that specifically cautions jurors that *"[c]arelessness or negligence or foolishness on [the defendant's] part is not the same as knowledge and is not enough to convict."* *Id*. (quoting § 2.09, emphasis in original). It explained that the "[t]he Sixth Circuit's Pattern Jury Instruction on deliberate ignorance, by its own terms, only applies when there is sufficient evidence to support a finding of deliberate ignorance beyond a reasonable doubt", and that where there is insufficient evidence to support such a theory, the jury "will consider the theory, and then dismiss it for what it is—mere surplusage, a theory of scienter that is insufficient to support the conviction." *Id*. at 786. Because there was sufficient evidence that Mari was actually aware that he was transporting narcotics, the court concluded that any error in instructing on deliberate ignorance was "harmless as a matter of law." *Id*. at 785.[7]

In the wake of the ruling in *Mari*, the Sixth Circuit has consistently rejected the argument that a district court lowers the bar for conviction by giving the instruction found at § 2.09 of the pattern instructions. *See, e.g., United States v. Doyle*, 720 F. App'x 271, 279 (6th Cir. 2018) (by advising the jury that negligence was insufficient to convict, "the district court did not lower the burden of proof" by instructing on deliberate ignorance); *United States v. Patel*, 651 F. App'x 468, 472 (6th Cir. 2016) (finding no concern that the jury convicted on the basis of negligence because the district court "clearly presented deliberate ignorance as an alternative to actual knowledge, either of which satisfied the statutory knowledge requirements"); *Mitchell*, 681 F.3d at 877 (rejecting argument that "the concept of deliberate ignorance [was] totally irrelevant to the

---

[7] In finding that there was sufficient evidence of actual knowledge, the court relied upon the "suspicious circumstances surrounding" the defendant's travel plans and the fact that the defendant's testimony was not consistent with the officer's accounts at the scene. As such, the court found that "[a] jury could rationally conclude that Mari's testimony was not credible, and that the whole story about transporting furniture to Houston was just a fabrication to cover up his actual purpose—transporting drugs." *Id*. at 785 n.2.

issue at hand"); *United States v. Rayborn*, 491 F.3d 513, 519–20 (6th Cir. 2007) (rejecting the argument that giving the deliberate ignorance instruction was reversible error because the only issue at trial was whether defendant knew or did not know that the tax returns he signed were not the ones submitted to the IRS).

In the present case, the government principally proceeded on a theory of actual knowledge, and—as the Court has already detailed—the evidence at trial amply supported the government's theory. Goins's nervousness and suspicious behavior before and during the stop, including her initial dishonesty about the nature of her travels, locking the vehicle's doors and rolling up the windows when she was asked to exist the vehicle, her apparent resignation when she learned that the vehicle was going to be searched, the highly suspect instructions she received regarding her trip, the packaging of the drugs and the fact that she was traveling in the direction that was consistent with the flow of narcotics in this country, and finally the fact that the unlocked suitcase was easily accessible and had female clothing in it, all supported an inference that she knew she was transporting narcotics. Given the existence of sufficient evidence of actual knowledge, along with the fact that the Court properly instructed the jury that negligence was insufficient to convict, any possible error in giving the deliberate ignorance instruction was harmless as a matter of law. *See Mari*, 47 F.3d at 785.

That said, the evidence at trial clearly supported a deliberate ignorance instruction. Defense counsel drew out on cross-examination of the government's witnesses that couriers typically carry either drugs or currency, and that none of the witnesses knew whether Goins actually looked in the suitcase or was told before she was pulled over by police that it contained cocaine. While counsel noted in his opening statement that Goins probably thought she was

somehow involved in an illegal enterprise, he argued in his opening statement and again in his closing argument that the evidence supported a finding that Goins could have thought she was merely transporting the cash proceeds from the criminal activity. Goins therefore placed before the jury the possibility that she thought she was delivering currency. Having introduced this defense theory, it was incumbent on the government to "argue to the jury a competing theory— that [Goins] had avoided deliberate knowledge of the" contents of the suitcase "in order to insulate [herself] from criminal liability." *Mitchell*, 681 F.3d at 879 (defendant opened the door to a theory of deliberate ignorance by offering evidence that he was merely negligent in learning the truth about his law partners' illegal activities). Given that the purpose of the deliberate ignorance instruction is to "prevent[] a criminal defendant from escaping conviction merely by deliberately closing [her] eyes to the obvious risk that [s]he is engaging in unlawful conduct[,]" *Geisen*, 612 F.3d at 485–86 (quotation marks and citation omitted), the instruction was "well-suited to the situation presented by this case." *Mitchell*, 681 F.3d at 879.

Because the Court properly instructed the jury on the theory of deliberate ignorance, Goins is not entitled to a new trial on this ground.[8]

### C. Motion to Suppress

Goins also argues that she is entitled to a new trial because the Court erred in denying her suppression motion. The government complains that Goins is improperly using Rule 33 to reopen her suppression motion. Rule 12(b)(3)(C) generally requires a criminal defendant to file a suppression motion *before* trial. (Doc. No. 57 at 5.) The government underscores that Goins has

---

[8] Goins has not argued that the Court's instruction misstated the law on deliberate ignorance, and, in fact, she has conceded that the instruction as given "was an accurate statement of the law[.]" (Doc. No. 56 at 2.) Of course, the Sixth Circuit has repeatedly held that § 2.09, from which the instruction was taken, represents an accurate statement of the law. *Mari*, 47 F.3d at 785 (citing *Lee*, 991 F.2d at 351).

offered no reason for delaying in asking the Court to revisit its ruling until after the case proceeded to trial. *See United States v . Archambault*, No. 13-cr-100A, 2016 WL 3546022, at *3 (W.D.N.Y. May 10, 2016) (questioning the propriety of using Rule 33 to reopen a pre-trial suppression motion).

The Court need not reach the question of whether this argument is improperly raised in a post-trial motion because the argument does nothing more than superficially rehash the arguments Goins raised in her suppression motion. Prior to trial, the Court held an evidentiary hearing on the motion, after which, it issued a detailed opinion explaining its reasons for denying the motion. (*See* Doc. No. 27.) The Court sees no purpose in revisiting that decision as it was supported by the facts surrounding the traffic stop and Sixth Circuit law regarding brief investigatory detentions that are related to suspected narcotics activity. The Court's pre-trial denial of her suppression motion provides no basis to grant a new trial.

V. **CONCLUSION**

For the foregoing reason, the motion of defendant Tashe Goines to permit consideration of untimely post-trial motions is GRANTED, and Goines's motion for judgment of acquittal and/or a new trial is DENIED.

**IT IS SO ORDERED**.

Dated: December 22, 2021

                                                **HONORABLE SARA LIOI**
                                                **UNITED STATES DISTRICT JUDGE**